UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DALE WEBB,

                Plaintiff,

      v.                                      Case No. 15-CV-0898

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

**DECISION AND ORDER AFFIRMING COMMISSIONER'S DECISION**

This is an action for review of the final decision of the Commissioner of Social Security denying Plaintiff Dale Webb's application for disability insurance benefits under Title II of the Social Security Act. Webb challenges the decision by the Administrative Law Judge (ALJ) denying him benefits because the ALJ failed to follow Social Security Administration (SSA) rulings and regulations. In particular, Webb contends that the ALJ erred by failing to give his treating physician's opinion controlling weight and by improperly giving more weight to the State agency physicians. For the reasons stated in this opinion, the Commissioner's decision will be affirmed.

**BACKGROUND**

Webb filed an application for benefits on January 30, 2012 and alleged he became disabled on November 5, 2010. R. 202. He listed numerous physical impairments caused by a severe crushing injury to his lower extremities he sustained in a workplace accident when he was caught between the bucket and frame of a skid steer. R. 264, 378, 883. At the time, Webb was employed as a general laborer by P. M. Concrete, Inc. R. 47. As a result of the accident, Webb sustained a

pelvic fracture, peroneal and scrotal lacerations and bilateral femoral nerve/arterial injury. R. 265. He underwent multiple surgeries to repair the damage. Webb required reconstruction of both femoral arteries and a temporary colostomy. R. 432, 839. In April 2008, the colostomy was reversed. R. 459, 468.

After recovering from this surgery, Webb worked four hours per day with some lifting; however, in August 2008, he developed a hernia requiring surgical repair with mesh. R. 474, 683. The mesh became infected shortly thereafter and created persistent draining sinuses. R. 676, 807. Dr. Timothy Wengert treated the infection with antibiotics, but explained to Webb in October 2008 that the mesh would need to be removed. Webb was then "minimally symptomatic" and opted to do nothing. R. 685. Webb saw Dr. Panna Varia for new work restrictions, and on October 29, Dr. Varia concluded Webb could temporarily return to light duty work for four hours per day and restricted his lifting to twenty pounds. R. 687. By December 2008, Dr. Wengert released Webb from any physical restrictions and follow-up, but reminded Webb that the mesh could be removed whenever he decided to have the surgery. R. 701.

Webb tolerated the draining sinuses caused by the infected mesh for nearly two years before finally getting the mesh removed in April 2010. R. 753, 757. Approximately four months after the surgery, he was released from physical restrictions but by October 2010, the hernia reappeared and required surgery to insert mesh. R. 835, 839. Webb did not have surgery to repair the hernia until December 2011. R. 767. Dr. Wengert opined Webb was "completely disabled pending recovery" but released Webb from restrictions and gave him a "return-to-work slip" for February 20, 2012, two months after the surgery. R. 867, 871.

2

As for his other medical conditions, Webb developed foot drop in his left foot. R. 788. In June 2009, Dr. Varia noted lower extremity weakness and decreased range of motion caused by the workplace injury. R. 786. Webb received an ankle brace that fit in his work boot to minimize his ankle pain while working. R. 788–89. As a result of the foot drop, he moved slower and looked down while walking to avoid tripping. R. 49. He was also challenged with balance and walking on uneven surfaces. R. 842.

On July 30, 2012, as part of his workers compensation claim, Webb sought an evaluation of his physical capabilities from Dr. Steven Lamberson. R. 883. Dr. Lamberson last saw Webb in 2008 even though Webb was last seen in the department by Dr. Varia in 2010. Webb indicated he had not worked in the last eighteen months because of constant pain in his left leg and foot. He stated walking increased his pain and sitting increased his stiffness. *Id.* His left foot drop interfered with his mobility. R. 884. Dr. Lamberson recommended a formal functional capacity evaluation (FCE). *Id.*

On August 30, 2012, Tanya Schaer, an occupational therapist, conducted Webb's FCE. R. 779. She noted that, during the evaluation, Webb performed tasks requiring "grip strength, bending, crouching, kneeling, crawling, twisting, overhead reach, balance, forward flexion, pushing, pulling, and a variety of lifting." R. 781. She concluded Webb demonstrated functioning at a light work level and could safely lift twenty pounds infrequently and ten pounds frequently. R. 781–82. Ms. Schaer limited Webb to occasional sitting and driving, standing, walking, bending, squatting, and climbing. R. 782. She recommended no exposure to moving machinery or unprotected heights; avoiding wet work; and alternating between sitting, standing, and walking. *Id.* Dr. Lamberson reviewed the FCE results and added the limitation that Webb could neither work more than four

3

hours a day nor work a full five-day work week. R. 886. Ultimately, Dr. Lamberson concluded that Webb was "totally and permanently disabled." *Id.*

The record also contains the opinions of two state agency physicians who reviewed the file, but did not personally examine Webb. Dr. Pat Chan reviewed the file on April 23, 2012, and concluded that Webb was capable of light work. R. 93, 100–01. A second state agency physician, Dr. Syd Foster, reviewed the file on October 9, 2012, and concluded that Webb was limited to sedentary work. R. 113–14.

The SSA denied Webb's initial application on April 23, 2012 and on reconsideration on October 9, 2012. R. 14–15, 93. After his application was denied upon reconsideration, Webb requested an administrative hearing. R. 104. On December 9, 2013, ALJ William Spalo held a hearing at which Webb, who was represented by counsel, and a vocational expert testified. R. 39.

The ALJ determined Webb was not disabled. R. 21–34. He concluded Webb met the insured status requirements and had not engaged in substantial gainful activity since November 5, 2010. The ALJ found Webb had four severe impediments: "hernia (status post surgery), history of pelvic fractures (status post surgery), left foot drop, and obesity." *Id.* At step three, the ALJ determined that Webb's impairments did not meet or medically equal a listing. R. 24–25. The ALJ then determined Webb's RFC:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). He was precluded from climbing ladders, ropes, or scaffolds. He was limited to occasional stooping, crouching, and climbing ramps or stairs. He was required to avoid concentrated exposure to extreme cold. He was required to avoid even moderate exposure to dangerous machinery and unprotected heights. He was limited to simple, routine, and repetitive tasks.

4

R. 26. With this RFC, the ALJ found Webb was unable to perform past relevant work but could perform other jobs in the national economy, such as production worker, general office clerk, and food checker. R. 32–33. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Webb's request for review on May 20, 2015. R. 16. Webb then commenced this action for judicial review.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Webb's sole argument is that the ALJ failed to properly evaluate the opinion of Dr. Steven A. Lamberson, a physician at Marshfield Clinic where Webb received most of the treatment for his injuries. On August 30, 2012, Dr. Lamberson determined Webb "would not be able to work even 20 hours a week on a consistent basis." R. 895. He opined that Webb is "totally and permanently disabled." *Id.* The ALJ gave little weight to this opinion. R. 30. Webb asserts the ALJ did not provide "good reasons" for giving Dr. Lamberson's opinion little weight and failed to consider the checklist factors. Pl.'s Br. in Supp. at 15, 23, ECF No. 11.

A treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c). If the ALJ discounts a treating source's opinion, he must provide "good reasons" for doing so. *Id.*; *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). The ALJ must then determine the opinion's weight using the factors listed in § 404.1527(c), including the "length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Campbell*, 627 F.3d at 307 (quoting *Larson*, 615 F.3d at 751). The ALJ is not required to "explicitly weigh every factor." *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 414–16 (7th Cir. 2008). Rather, the ALJ need only "sufficiently account for the factors." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Although the ALJ in this case did not explicitly weigh every factor, he did not completely disregard them. The ALJ explicitly provided four reasons for giving little weight to Dr. Lamberson's opinion. R. 30–31. First, he concluded Dr. Lamberson's opinion was inconsistent with the objective

6

medical evidence. *See* 20 C.F.R. § 404.1527(c)(4). Webb argues that the ALJ impermissibly "played doctor" by making his own medical findings. Pl.'s Br. in Supp. at 17, ECF No. 11. An ALJ cannot "substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870 (citing *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996)). Here, the ALJ thoroughly discussed the medical evidence in making his decision. Contrary to Webb's assertion, he did not play doctor.

Substantial evidence in the record supports the sedentary work restrictions contained in the RFC. By contrast, Dr. Lamberson's opinion that Webb was "totally and permanently disabled" has little support other than Webb's own statements. The ALJ cited the contrary medical evidence to discount Dr. Lamberson's opinion. The ALJ referred to Dr. Singh's observations from his November 2012 examination. R. 30. Webb saw Dr. Singh for an "annual complete physical examination and laboratory workup." R. 904. Dr. Singh stated Webb was doing well overall. R. 904. He noted Webb ambulated with the help of a left ankle brace and that the movements of Webb's hips and knees were mild to moderately restricted but were not painful. R. 905. The ALJ also cited inconsistencies in Dr. Lamberson's own medical notes to discount his opinion. R. 30. On July 30, 2012, one month before Dr. Lamberson found Webb "totally and permanently disabled," Dr. Lamberson evaluated Webb's physical capabilities at the request of his attorney. R. 892. Dr. Lamberson did not make any determinations regarding disability but recommended Webb complete a FCE. The ALJ noted the examination revealed Webb had "moderate limitation on hip rotation, knee crepitus without synovitis, an antalgic gait, and neurological deficits in the lower extremities, including right leg weakness and left foot drop." R. 30. The ALJ concluded the medical evidence

7

was inconsistent with a finding of disability but supported the ALJ's determination that, with the restrictions contained in the RFC, Webb could perform sedentary work.

The ALJ also noted that Dr. Lamberson's opinion was not supported by the FCE. R. 31. Webb argues the ALJ failed to properly consider the results of the FCE performed by Tanya Schaer, an occupational therapist, on August 30, 2012. Pl.'s Br. in Supp. at 18–19, ECF No. 11. After the FCE, Webb met with Dr. Lamberson to discuss its results. R. 895. Dr. Lamberson noted the FCE revealed that Webb's balance and posture were impaired, he had difficulty with forward flexion tasks and limited static standing tolerance, and he could lift twenty-five pounds. In his findings, Dr. Lamberson echoed the FCE's functional restrictions but added a significant limitation of his own. Dr. Lamberson offered the following recommendation:

> It is recommended that [Webb] work no more than four hours a day and he likely would not be able to work a five-day work week. By his report, he has considerably more pain a day or two following being more physically active, and I do expect that he would not be able to work even 20 hours a week on a consistent basis.

*Id.*

While the FCE included among its recommendations the notation "occasional" next to various activities, including sit/drive, stand, walk, bend, squat, climb, it said nothing about limiting Webb to four hours a day and less than five days a week. It noted that Webb "demonstrated functioning at a light work level with a safe lifting limit of 20 pounds infrequently and 10 pounds frequently." R. 781–82. It did not limit the number of hours or days he could work.

The ALJ reviewed the functional limitations set forth in the FCE and Dr. Lamberson's objective findings and more than accounted for them in the RFC he formulated. R. 31. The FCE and Dr. Lamberson concluded Webb was able to complete light work. R. 781, 895. The ALJ,

8

however, limited him to sedentary work and not even the full range of sedentary work. R. 26. The FCE recommended occasional sitting and driving, standing, walking, bending, squatting, and climbing as well as no exposure to moving machinery or unprotected heights; avoiding wet work; and alternating between sitting, standing, and walking. R. 782. To address these limitations, the ALJ restricted Webb to "occasional stooping, crouching, and climbing ramps or stairs" and required that he "avoid even moderate exposure to dangerous machinery and unprotected heights." R. 26. By limiting Webb to sedentary work with essentially the same additional limitations, the ALJ exceeded the functional limitations recommended in the FCE. The ALJ did not err in his consideration of the FCE.

The ALJ also rejected Dr. Lamberson's opinion regarding Webb's inability to retrain. Dr. Lamberson found that an undiagnosed learning disability prevented Webb from completing vocational retraining. R. 895. The ALJ expressed concern about this assessment because Dr. Lamberson's conclusion was based solely on Webb's subjective complaints. R. 31. Subjective reports to a treating source are "the opposite of objective medical evidence and an ALJ is not compelled to accept them." *Schaaf*, 602 F.3d at 875. Webb was never diagnosed with a learning disability and his medical records do not mention a learning deficiency. In fact, in 2008, Dr. Lamberson saw Webb for lower extremity weakness and concluded his mental status examination was normal. R. 597. Indeed, in his report to the Agency, Webb denied that he had attended special education classes, and in his testimony described how he started his own business. R. 46, 219. A medical opinion based solely on the claimant's subjective remarks, rather than objective material facts, is not binding on the ALJ. The ALJ did not err in refusing to assign considerable weight to Dr. Lamberson's opinion regarding retraining.

9

In sum, nothing in the medical record supports the substantial limitations Dr. Lamberson added in November 2012. The ALJ noted that until Webb came to see Dr. Lamberson for an evaluation at the request of his attorney, Dr. Lamberson had not seen him since February 2008. R. 27, 892. The ALJ appropriately relied on the objective medical evidence and the lack of any support in his own records to discount Dr. Lamberson's opinion that Webb could not work a full work week. *See* 20 C.F.R. § 404.1527(c)(4).

Next, the ALJ discounted Dr. Lamberson's opinion because he merely accepted Webb's complaints of pain uncritically. R. 31. The ALJ determined Webb's subjective complaints of pain were inconsistent with his activities of daily living. *See* 20 C.F.R. § 404.1527(c)(3). An ALJ can question a claimant's subjective complaints given "the number of daily activities she performed, the level of exertion necessary to engage in those activities, and the paucity of medical records confirming a limited ability to work." *Lott v. Colvin*, 541 F. App'x 702, 707 (7th Cir. 2013). In this case, the ALJ noted Webb is able to "tend to his own personal care tasks, care for two dogs, do some cooking, drive and go shopping, help with household cleaning, and mow the lawn." R. 31. The ALJ did not translate these activities into an ability to work full-time but concluded the daily activities called into question Webb's subjective complaints of pain. As such, the ALJ permissibly found that Webb's subjective complaints did not support a finding that he was totally disabled.

The ALJ correctly labeled Dr. Lamberson's opinion that Webb was "totally and permanently disabled" as a determination reserved to the Commissioner. R. 31. "[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). While the Commissioner is responsible for making the ultimate disability determination, the ALJ must not disregard a treating physician's

10

opinion that a claimant is disabled. SSR 96–5p; *see also Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Here, the ALJ did not disregard Dr. Lamberson's opinion. The ALJ noted that Dr. Lamberson offered this opinion in the context of a worker's compensation claim and did not make his finding using the SSA's regulations. The ALJ concluded no objective evidence suggested Webb could not sustain a normal workday or workweek at the sedentary exertional level with the limitations included in the RFC. R. 31.

Finally, the ALJ cited the state agency consultants who had reviewed the entire record and found Webb capable of regular sustained work. This evidence also supports the ALJ's rejection of Dr. Lamberson's opinion that Webb was totally disabled. Citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), and various district court opinions, Webb argues that the opinion of a state agency physician alone is not sufficient to support an ALJ's rejection of the opinion of a treating physician. Pl.'s Br. in Supp. at 23, ECF No. 11. Thus, Webb contends, the ALJ "made another error in giving more weight to the State Agency physician." *Id.*

Whether this is a correct statement of the law is, to say the least, unclear. *See, e.g.*, *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) ("There was evidence—the report of the nonexamining consultant—that contradicted the reports of the treating physicians. . . . So the presumption falls out and the checklist comes into play."); *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006); *Patterson v. Barnhart*, 428 F. Supp. 2d 869, 885 n.19 (E.D. Wis. 2006) ("This holding is at odds with *Gudgel*, which the *Hofslien* court did not cite, and which held that the 'contradictory opinion of a non-examining physician does not, by itself, suffice' to reject an examining physician's opinion."). Thus, the status of the treating source rule in this circuit is uncertain.

11

But even if Webb is correct on the law, his argument still fails because the ALJ did not reject Dr. Lamberson's opinion that he could only work four hours a day less than five days a week based on the opinion of the state agency physicians alone. He gave that aspect of Dr. Lamberson's opinion little weight because, as explained above, it was not supported by "medically acceptable clinical and laboratory diagnostic techniques" and was "inconsistent with the other substantial evidence" in the record, including the opinions of the state agency physicians. 20 C.F.R. § 404.1527(c). It was not error to do so. "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). It is entirely appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation. *Id.* Moreover, "the fact that these physicians reviewed the entire record strengthens the weight of their conclusions." *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citing *Hudson v. Barnhart*, 345 F.3d 661, 667 (8th Cir. 2003)). As with all medical opinions, the opinions of state agency medical consultants "can be given weight only insofar as they are supported by evidence in the case record." SSR 96–6p. When considering a state agency physician's opinion, the ALJ should evaluate the findings based on "the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weight of the opinions." 20 C.F.R. § 404.1527(e)(2). The ALJ must explain the weight given to the opinions of state agency physicians. *Id.*

As noted above, Dr. Chan opined in April 2012 that Webb demonstrated the maximum sustained work capability for light work without any further restrictions. R. 102. Dr. Chan

12

determined Webb could lift twenty pounds occasionally and ten pounds frequently; stand about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. R. 100. Conversely, in October 2012, Dr. Foster opined that a sedentary work limitation was more appropriate than a light work restriction. R. 115. Dr. Foster further concluded that, based on Webb's age, education, and RFC, Webb could adjust to other work. *Id.* The ALJ gave great weight to Dr. Foster's opinion and less weight to Dr. Chan's. R. 31. The ALJ reasoned Dr. Foster's opinion was more restrictive than the nonexertional limitations identified in the FCE in that Dr. Foster limited him to sedentary work. The ALJ also determined Dr. Foster's opinion was supported by the medical record as well as Webb's subjective complaints. *Id.* The ALJ sufficiently explained the weight he gave the consultants.

An ALJ need only "minimally articulate" his reasoning for the weight he assigns to a physician's opinion. *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012). In this case, the ALJ sufficiently accounted for the checklist by articulating four detailed "good reasons" to deny giving Dr. Lamberson's opinion controlling weight. *Larson*, 615 F.3d at 751. In addition, the ALJ at least implicitly noted the lack of an ongoing treatment relationship with Dr. Lamberson. R. 27 (noting that when Webb requested Dr. Lamberson provide an evaluation of his physical capabilities on July 30, 2012, Dr. Lamberson had not seen him since February 2008). The ALJ also considered that Dr. Lamberson had offered an opinion "in the context of a workers compensation claim rather than under the standards set forth by Social Security regulations." R. 31. The ALJ provided "an accurate and logical bridge" between the evidence and his conclusions. *Roddy*, 705 F.3d at 636. He gave good reasons for denying Dr. Lamberson's opinion that Webb could not work more than four hours a day

13

or five days a week controlling weight and for rejecting that aspect of the opinion altogether. Accordingly, the Commissioner's decision will be affirmed.

## CONCLUSION

For the reasons given above, the decision of the Commissioner is **AFFIRMED.** The Clerk is directed to enter judgment in favor of the Commissioner.

Dated this   20th   day of September, 2016.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

14